UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ARNOLD S. JACOBSON, et al., | ) | |
|---|---|---|
| Plaintiffs, | ) | |
| v. | ) | No. 4:14-cv-01333-AGF |
| METROPOLITAN ST. LOUIS SEWER DISTRICT, et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion (Doc. No. 7) of Defendants Metropolitan St. Louis Sewer District ("MSD") and the chairman of its board of trustees, James Buford ("Buford"), to dismiss Counts III, IV, VI, and VII of Plaintiffs' petition. Oral argument was held on December 10, 2014. For the reasons set forth below, the motion shall be granted in part and denied in part.

### BACKGROUND

Plaintiffs Arnold S. Jacobson and Joan G. Jacobson, individually and as trustees of the Jacobson Family Trust Dated 8/25/10, brought this action in state court on June 30, 2014, asserting a variety of federal and state law claims arising from the connection of a storm water sewer on Plaintiffs' property. Plaintiffs assert state law claims for trespass (Counts I and II), inverse condemnation (Count III), assault (Count IV), slander (Count VI), and negligence (Count VII), and a federal 42 U.S.C. § 1983 claim for violation of their constitutional rights to free speech (Count V). Defendants removed the action to

this Court on July 29, 2014, asserting federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367(a). (Doc. No. 1.)

Plaintiffs' claims arise from the discovery of an unrecorded storm water sewer on their property. The sewer was discovered when a contractor hit and damaged it during the demolition of a house on neighboring property. (Doc. No. 5 at 3.) Plaintiffs allege that the storm water sewer is controlled by Defendant MSD, and when MSD discovered the sewer, it disconnected the sewer and rerouted it away from the neighboring demolished property and directly through Plaintiffs' property. (*Id.* at 4.)

Plaintiffs allege that because MSD does not have an easement on Plaintiffs' property, the existence of the sewer is a "continuing trespass." (*Id.* at 4.)

Plaintiffs further allege that the sewer "leaks, has other defects, and was in a dangerous condition at the time Defendant MSD reconnected the storm water sewer line to [Plaintiffs' property]"; "Defendant MSD had actual notice of the dangerous condition in sufficient time prior to reconnecting the storm water sewer to have taken measures to protect against the dangerous condition"; "[t]he dangerous condition and the location of the storm water sewer created a reasonably foreseeable risk of harm" to Plaintiffs' property; and "the injury to [Plaintiffs' property] directly results from the dangerous condition of the storm water sewer and its location." (*Id.* at 4-5.) Plaintiffs allege that "[t]he damage to Plaintiffs' home and property substantially impairs Plaintiffs' peaceful employment of their property." (*Id.* at 5.) The only specific property damage alleged is Plaintiffs' single allegation under its negligence claim that "[a]s a direct result of

Defendants' negligence Plaintiff was injured by the devaluation of their property and water damage to their property." (*Id.* at 10.)

Next, Plaintiffs allege that when Plaintiff Joan G. Jacobson attempted to discuss these issues at a September 12, 2013 meeting of the board of trustees of MSD, Defendant Buford caused Ms. Jacobson to be physically removed from the meeting. Plaintiffs allege that these actions resulted in an assault on Ms. Jacobson and a violation of her constitutional right to free speech.

Finally, Plaintiffs allege that after the board meeting, MSD public information manager, Lance LeComb, made slanderous and defamatory statements to a newspaper regarding Ms. Jacobson. Plaintiffs allege that the defamatory statements damaged Ms. Jacobson's reputation and caused her "emotional, mental, and physical pain[.]" (Doc. No. 5 at 9-10.)

On August 28, 2014, Defendants moved to dismiss the inverse condemnation, assault, slander, and negligence claims in Counts III, IV, VI, and VII. (Doc. No. 7.) Defendants do not seek to dismiss the remaining trespass and § 1983 claims and have instead answered those claims. (Doc. No. 9.)

Defendants argue that Plaintiffs' negligence, assault, and slander claims against MSD are barred by the doctrine of sovereign immunity. Defendants contend that although sovereign immunity may be waived with respect to the negligence claim, pursuant to Mo. Rev. Stat. § 537.600.1(2), Plaintiffs have not sufficiently pleaded the elements of such waiver. Defendants argue there are no grounds for waiver of sovereign immunity with respect to the assault and slander claims.

Defendants also argue that Plaintiffs' assault claim against Buford is barred by the doctrine of official immunity.[1] Defendants argue that Buford is immune from liability for assault because his actions were committed during the course of his duties as a public official performing a discretionary act.

Defendants do not assert immunity from Plaintiffs' inverse condemnation claim. However, Defendants argue that Plaintiffs fail to state a claim for inverse condemnation based on nuisance because they fail to adequately plead the elements of that claim, including that the sewer was defective or inadequate, that MSD had notice of such defective or inadequate condition, and that Plaintiffs suffered any damage as a result of such defective or inadequate condition.

Plaintiffs argue that sovereign immunity does not apply to their claims against MSD. With respect to their negligence claim, Plaintiffs argue that they have sufficiently pleaded waiver of immunity under Mo. Rev. Stat. § 537.600.1(2). Plaintiffs do not claim to have pleaded waiver with respect to the assault or slander claims. However, in response to the motion to dismiss, Plaintiffs suggest for the first time that there is an issue "whether Defendant MSD has waived its sovereign immunity by purchasing insurance covering the acts in question." (Doc. No. 13 at 4.)

Plaintiffs also question whether Defendant Buford is protected by official immunity with respect to the assault claim. In their brief, Plaintiffs contest Buford's immunity by arguing that "[t]he public duty doctrine does not shield public officials from

---

[1] At oral argument, Plaintiffs confirmed that the only claims asserted against Defendant Buford are the assault and § 1983 claims.

liability resulting from the breach of a duty owed to a particular individual." (*Id.* at 6.) However, at oral argument, Plaintiffs acknowledged that this argument is irrelevant because Buford does not assert immunity under the public duty doctrine. Instead, Plaintiffs raised an entirely new argument, that as chairman of the MSD board of trustees, Buford is not a public employee entitled to official immunity. Because Plaintiffs offered no legal authority for this position, and because Defendant offered no legal authority to contest it, the Court requested supplemental briefing on the issue from both parties. Plaintiffs also suggested at oral argument that, although they did not plead that Buford acted with malice, which would be an exception to official immunity, they may be able to do so if given leave to replead.

Finally, Plaintiffs argue that they have stated a claim for inverse condemnation, which is not subject to the immunity doctrines, because they have pleaded that MSD reconnected the unrecorded sewer through Plaintiffs' property without an easement, constituting a taking of Plaintiffs' property without just compensation.

## **DISCUSSION**

To survive a motion to dismiss for failure to state a claim, a plaintiff's allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The reviewing court must accept the plaintiff's factual allegations as true and construe them in plaintiff's favor, but it is not required to accept the legal conclusions the plaintiff draws from the facts alleged. *Iqbal*, 556 U.S. at 678; *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766,

768-69 (8th Cir. 2012). A court must "draw on its judicial experience and common sense," and consider the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Group*, 592 F.3d 893, 896 n.4 (8th Cir. 2010) (quoting *Iqbal,* 556 U.S. at 679).

"Under [Mo. Rev. Stat.] § 537.600.1, a public entity, which includes [defendant MSD], is afforded sovereign immunity from tort actions." *Trumbo v. Metro. St. Louis Sewer Dist.*, 877 S.W.2d 198, 201 (Mo. Ct. App. 1994); *see also Hummel v. Metropo. St. Louis Sewer Dist.*, 782 S.W.2d 451, 453 (Mo. Ct. App. 1990) (applying sovereign immunity to tort claims against MSD). Sovereign immunity extends to both negligence and intentional torts. *See Mitchell v. Village of Edmundson*, 891 S.W.3d 848, 850 (Mo. Ct. App. 1995) (holding that "[i]ntentional torts have consistently been found to fall within the shield of sovereign immunity" under Missouri law and including slander in the list of intentional torts to which sovereign immunity applies); *Miller v. Albright*, No. 4:07-CV-1086 CAS, 2008 WL 1840785, at *2 (E.D. Mo. Apr. 23, 2008) (applying sovereign immunity to assault claim under Missouri law).

However, Missouri statutes provide certain exceptions to sovereign immunity, which the Missouri courts construe narrowly. *Trumbo*, 877 S.W.2d at 201. "A party pleading an exception to a general rule of non-liability must plead the facts giving rise to the exception." *Thomas v. City of Kansas City*, 92 S.W. 3d 92, 101 (Mo. Ct. App. 2002); *see also Shiflette v. Missouri Dep't of Natural Res.*, 308 S.W.3d 331, 334 (Mo. Ct. App. 2010) ("Sovereign immunity is not an affirmative defense but is part of the plaintiff's prima facie case.").

Under § 537.600.1, sovereign immunity is expressly waived in automobile cases and in cases involving injuries caused by the dangerous condition of a public entity's property. Mo. Rev. Stat. § 537.600.1(1)-(2). The provision concerning a dangerous condition requires plaintiffs to plead sufficient facts to demonstrate (1) a "dangerous condition" of the property, which Missouri courts have construed to mean solely "a defect in the physical condition of the property"; (2) injury directly resulting from the dangerous condition; (3) the dangerous condition created a reasonably foreseeable risk of harm of the kind plaintiff incurred; and (4) a public employee negligently created the condition, or the public entity had actual or constructive notice of the dangerous condition. *Trumbo*, 877 S.W.2d at 201. Immunity is not waived for "public property which is not physically defective but may be the site of injury as a result of misuse or other intervening acts." *Id.*

"Additionally, section 537.610.1 provides that sovereign immunity can be waived by the purchase of insurance covering tort claims." *Epps v. City of Pine Lawn*, 353 F.3d 588, 593 (8th Cir. 2003); *see also* Mo. Rev. Stat. § 537.610.1. "[A] plaintiff must specifically plead facts demonstrating that the claim is within this exception to sovereign immunity" by pleading the existence of insurance and that the insurance covers the plaintiff's claim. *Epps*, 353 F.3d at 594; *see also Brennan v. Curators of the Univ. of Missouri* 942 S.W.2d 432, 437 (Mo. Ct. App. 1997) ("[W]e hold that [plaintiffs] were obligated to plead facts sufficient to allege a waiver of sovereign immunity by virtue of [defendant's] adoption of the General Liability Plan.").

Plaintiffs have not pleaded any exception to sovereign immunity with respect to their assault and slander claims against MSD. These claims do not involve an automobile or a dangerous condition of property. And although Plaintiffs state in their response brief that there may be an issue regarding "whether" MSD purchased insurance covering the acts in question, Plaintiffs have not pleaded that MSD has purchased any such insurance. At oral argument, Plaintiffs suggested that, if given leave to amend, they may be able to plead the existence of applicable insurance upon information and belief. Defendants responded that they would be willing to provide Plaintiffs a copy of MSD's insurance policy, and Defendants stated that a review of the policy would demonstrate that immunity has not been waived in this case. Because the existence of applicable insurance has not been pleaded and no other grounds for waiver apply, the Court will dismiss Plaintiffs' assault and slander claims against MSD in Counts IV and VI without prejudice. Plaintiffs may replead these claims if, after review of the insurance policy and applicable case law, they are able to properly plead a waiver of sovereign immunity.

Turning next to Plaintiffs' negligence claim against MSD, the Court finds that sovereign immunity may be waived under Mo. Rev. Stat. § 537.600.1(2), but Plaintiffs have not adequately pleaded the elements of such waiver. Plaintiffs' sparse allegations that the sewer "leaks" and has other unspecified "defects," that MSD had notice of these defects, and that their property suffered from "water damage" and "devaluation" may be barely sufficient to plead the physical defect, notice, and damage elements of waiver based on a dangerous condition of property. However, Plaintiffs have not pleaded any facts in support of the remaining elements, including that the damage to their property

was directly caused by the specific defects at issue, and was a reasonably foreseeable risk of harm arising from such defects. *See Trumbo*, 877 S.W.2d at 201. At oral argument, Plaintiffs suggested that if given leave to amend, they would be able to cure these pleading deficiencies. The Court will therefore dismiss Plaintiffs' negligence claim in Count VII without prejudice.

The Court reaches a different conclusion with respect to Plaintiffs' inverse condemnation claim, however. Defendants argue that although sovereign immunity does not apply to Plaintiffs' inverse condemnation claim, this claim fails for the same reason their negligence claim fails, namely, because Plaintiffs do not adequately plead a defect in the sewer and resulting damage. This argument would be correct if Plaintiffs' inverse condemnation claim sounded in nuisance. An inverse condemnation claim based on nuisance requires more than the mere existence of a public sewer on Plaintiffs' property; it requires an inadequately operating sewer, MSD's notice of the issue, and resulting injury to Plaintiffs' property. *See Basham v. City of Cuba*, 257 S.W.3d 650, 653 (Mo. Ct. App. 2008) ("The existence and operation of a public sewer system does not per se constitute a nuisance."); *see also Miller v. City of Wentzville*, 371 S.W.3d 54, 61 (listing elements of inverse condemnation based on nuisance). As discussed above, Plaintiffs have not pleaded sufficient facts in support of these elements.

However, at oral argument, Plaintiffs suggested that, even though their petition claims damage for impairment of the "peaceful enjoyment" of their property (Doc. No. 5 at 5), they did not intend to assert an inverse condemnation claim sounding in nuisance. Rather, Plaintiffs suggest that their inverse condemnation claim, like their trespass

claims, is based on the taking of property without just compensation. Missouri courts recognize inverse condemnation claims "under a number of theories, including nuisance, negligence and trespass." *Shade v. Missouri Highway and Transp. Comm'n*, 69 S.W.3d 503, 509 (Mo. Ct. App. 2001).

Upon review of Plaintiffs' petition, the Court finds that Plaintiffs have sufficiently stated a claim for inverse condemnation sounding in trespass. "Where there has been a permanent trespass committed by a public utility, the property owner has an election of remedies, one of which is inverse condemnation." *Reorganized Sch. Dist. No. 2 v. Missouri Pac. R.R. Co.*, 503 S.W.2d 153, 160 (Mo. Ct. App. 1973). Plaintiffs allege that MSD knowingly reconnected an unrecorded sewer through their property without an easement. Plaintiffs may elect to pursue relief for this injury under alternative theories of trespass and inverse condemnation.[2] *Sterbenz v. Kansas City Power & Light Co.*, 333 S.W.3d 1, 9-10 (Mo. Ct. App. 2010) (recognizing plaintiff's ability to plead "alternative theories for trespass, ejectment, and for inverse condemnation" for electric company's installation of power line in absence of easement). Therefore, the Court will deny Defendants' motion to dismiss Plaintiffs' inverse condemnation claim in Count III.

The only remaining issue is whether Defendant Buford is immune from liability for assault under the doctrine of official immunity. Because "sovereign immunity is a tort protection for government entities, not their employees," public employees must rely on one of two other Missouri government immunity doctrines to escape liability: official

---

[2] The Court notes that although Plaintiffs did not specifically plead their inverse condemnation and trespass claims in the alternative, Plaintiffs will not be able to obtain a double recovery for the same injury.

immunity or the public duty doctrine. *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. 2008). Although the official immunity and public duty doctrines are related, they are legally distinct doctrines. *See id.* (discussing distinctions).

Official immunity is a "judicially-created doctrine" that "protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary," rather than "ministerial," acts. *Southers*, 263 S.W.3d at 610. "A discretionary act requires the exercise of reason in the adaptation of means to an end and discretion in determining how or whether an act should be done or course pursued." *Id.* Whereas a ministerial act "is one of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." *Id.* Like sovereign immunity, official immunity applies to both negligence and intentional torts. *See DaVee v. Mathis*, 812 S.W.3d 816, 827 (Mo. Ct. App. 1991) (applying official immunity to bar assault claim).

In this case, Plaintiffs conceded at oral argument that Buford's actions in removing Ms. Jacobson from the board meeting were discretionary actions for purposes of official immunity. Plaintiffs also conceded that, although there is an exception to official immunity for discretionary acts done in bad faith or with malice,

Plaintiffs have not pleaded that Buford acted in bad faith or with malice in this case.[3] *State ex. Rel. Twiehaus v. Adolf*, 706 S.W.3d 443, 446-47 (holding that bad faith or malice in this context means "actual intent to cause injury").

From the foregoing, it would appear that Plaintiffs' assault claim against Buford is precluded by official immunity, and Plaintiffs have not pled the facts necessary to invoke the exception. Plaintiffs asserted for the first time at oral argument that Buford's position as chairman of the board of trustees is not one which qualifies him as a public employee subject to official immunity. But Plaintiffs have presented no case law to support their assertion. The Court will be in a better position to address this issue, should it continue to be germane, following submission of the parties' supplemental briefing and Plaintiffs' amended pleading. If after further review of the case law Plaintiffs believe they can allege the facts necessary to invoke the exception, or that Buford's position does not come within the bounds of official immunity, Plaintiffs may reassert the claim. Defendants will then be in a position to move to dismiss, if appropriate. Therefore, at this stage, the Court will grant Defendants' motion to dismiss with respect to Plaintiffs' assault claim against Buford in Count IV, without prejudice.

---

[3] Plaintiffs have requested leave to amend their complaint to plead that Buford acted with bad faith or malice. To the extent Plaintiffs include such allegations in their amended complaint, the Court reminds Plaintiffs that "bare conclusory allegations of bad faith and malice," without specific facts evidencing intent to cause injury, are insufficient. *Stephens v. Dunn*, __ S.W.3d __, 2014 WL 123686, at *7 (Mo. Ct. App. Jan. 14, 2014); *see also Western Robidoux Printing & Lithographing Co., Inc. v. Missouri State Hwy. Comm'n*, 498 S.W.2d 745, 749 (Mo. 1973) ("Bare allegations of 'bad faith' are conclusions which are not to be considered in determining whether a plaintiff has stated a cause of action.").

# CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss is **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** with respect to Plaintiffs' assault, slander, and negligence claims in Counts IV, VI, and VII. These claims are **DISMISSED without prejudice**. The motion is **DENIED** in all other respects. (Doc. No. 7.)

**IT IS FURTHER ORDERED** that Plaintiffs shall have until **December 30, 2014** to file an amended complaint properly stating any appropriate assault, slander, and negligence claims that are not barred by sovereign or official immunity.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 11th day of December, 2014.