IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

ARNOLD S. JACOBSON and JOAN G. )
JACOBSON, Trustees of the JACOBSON )
FAMILY TRUST DATED 8/25/10, )
and ARNOLD S. JACOBSON and )
JOAN G. JACOBSON, Individually, )
                                           )
       Plaintiffs,                       )
                                           )
v.                                         )     Cause No.:   4:14-cv-01333-AGF
                                           )
METROPOLITAN SEWER DISTRICT, )
and JAMES BUFORD, )
                                           )
       Defendants.             )

## **FIRST AMENDED PETITION**

COME NOW Plaintiffs, ARNOLD S. JACOBSON and JOAN G. JACOBSON, Trustees of the Jacobson Family Trust dated 8/25/10 and ARNOLD S. JACOBSON and JOAN G. JACOBSON, Individually, by and through counsel, and for their cause of action states the following claims against Defendants METROPOLITAN SEWER DISTRICT, and JAMES BUFORD, former St. Louis City Trustee and Chairman of the Board of Metropolitan Sewer District:

### **The Parties**

1.       Plaintiffs ARNOLD S. JACOBSON and JOAN G. JACOBSON, Trustees of the Jacobson Family Trust dated 8/25/10, are the owners of the property located at 480 W. Lockwood, St. Louis, MO 63119.

1

2. Plaintiffs ARNOLD S. JACOBSON and JOAN G. JACOBSON, Individually are husband and wife and are citizens and residents of St. Louis County, Missouri.

3. Defendant METROPOLITAN SEWER DISTRICT (hereinafter referred to as Defendant MSD) is a public entity managed by a charter and governed by a six member Board of Trustees, conducting storm and sanitary water management activities in St. Louis County, Missouri.

4. Defendant JAMES BUFORD (hereinafter referred to as Defendant BUFORD) is a former St. Louis City Trustee and Chairman of the Board of Metropolitan Sewer District.

## Venue & Jurisdiction

5. This Court has jurisdiction over this action in inverse condemnation, as Plaintiffs reside in St. Louis County and Defendant MSD does business in St. Louis County and the public project at issue in this case is located in St. Louis County.

6. The property at issue in this case is 480 W. Lockwood, St. Louis, MO 63119 which is owned by the Jacobson Family Trust dated 8/25/10 (of which Plaintiffs ARNOLD S. JACOBSON and JOAN G. JACOBSON are the Trustees) in fee simple absolute of real estate located in St. Louis County, Missouri, more particularly described as:

> Lot 11 in Block 3 of New Helfenstein Park, a subdivision in St. Louis County, Missouri, according to the plat thereof recorded in Plat Book 6, Pages 42 and 43 of the St. Louis County Records.

> Subject to all conditions, restrictions and easements of record.

7. The amount in controversy exceeds $25,000.00 and is otherwise within the jurisdiction of the Court.

## Facts Common to All Counts

8. On or about October 2, 1986, Plaintiffs ARNOLD S. JACOBSON and JOAN G. JACOBSON acquired the property located at 480 W. Lockwood, St. Louis, MO 63119 (hereinafter referred to as "LOCKWOOD PROPERTY") via Special Warranty Deed, a copy of which is attached hereto and incorporated herein by reference as Exhibit A.

9. On or about August 25, 2010, Plaintiffs conveyed the LOCKWOOD PROPERTY via quit claim deed to ARNOLD S. JACOBSON and JOAN G. JACOBSON, Trustees of the Jacobson Family Trust dated August 25, 2010, a copy of which is attached hereto and incorporated herein by reference as Exhibit B.

10. The Jacobson Family Trust dated 8/25/10 is attached hereto and incorporated herein as Exhibit C.

11. The properties located at 145 Helfenstein and 133 Helfenstein abut the LOCKWOOD PROPERTY.

12. The house at 133 Helfenstein was demolished in 2011. (Hereinafter, "the DEMOLISHED PROPERTY").

13. During the demolition of the house on the DEMOLISHED PROPERTY Defendant MSD discovered the existence of an actual storm sewer for which it had no right, title, interest or easement for its presence on the DEMOLISHED PROPERTY. Neither was there any public notice of the existence of said sewer on the DEMOLISHED PROPERTY.

14. That above actual storm sewer continues to exist, again without right, title, interest or easement for its presence on the LOCKWOOD PROPERTY. Neither was there any public notice of the existence of said actual storm sewer on the LOCKWOOD PROPERTY

3

15. At the time Defendant MSD's map showed a storm sewer easement on the west (because of the curve in the road this may be considered south) boundary of the LOCKWOOD PROPERTY, which did not exist. Neither did Defendant MSD's map show the presence of the actual storm sewer discovered on the LOCKWOOD PROPERTY.

16. The route of the actual storm sewer goes diagonally across the backyard of the LOCKWOOD PROPERTY, under the house (which has an unfinished basement) and diagonally across the front yard. The actual storm sewer then crosses Lockwood, where it has failed and been repaired by Defendant MSD.

17. The actual storm sewer carries storm water and, upon information and belief, may contain sanitary sewer discharge.

18. The actual storm sewer's presence on the LOCKWOOD PROPERTY is a continuing trespass.

19. The actual storm sewer's presence on the LOCKWOOD PROPERTY continues to damage the LOCKWOOD PROPERTY.

20. On or about April 2012 Defendant MSD left painted lines on the LOCKWOOD PROPERTY marking the route of the actual storm sewer which runs under the house on the LOCKWOOD PROPERTY.

21. Defendant MSD trespassed on the LOCKWOOD PROPERTY to plot the actual storm sewer as it existed on the LOCKWOOD PROPERTY.

22. Defendant MSD disconnected the actual storm sewer on the DEMOLISHED PROPERTY and rerouted it away from the building site on the DEMOLISHED PROPERTY.

Case: 4:14-cv-01333-AGF   Doc. #: 28   Filed: 12/30/14   Page: 5 of 16 PageID #: 270

23. Defendant MSD reconnected the new rerouted actual storm sewer from the DEMOLISHED PROPERTY which then continued to the LOCKWOOD PROPERTY where Defendant MSD had no right to maintain the actual storm sewer.

24. The actual storm sewer on the LOCKWOOD PROPERTY leaks, has cracks and misaligned joints and a section which is caving in (see photo marked as Exhibit E attached hereto and incorporated herein by reference and was in a dangerous condition because of the defects in the physical condition of the actual storm sewer at the time Defendant MSD reconnected the actual storm sewer line to the LOCKWOOD PROPERTY.

25. The specific actions of Defendant MSD which indicated the defects in the physical condition of the actual storm sewer creating a dangerous condition and knowledge therefor by Defendant MSD are:

   a. In July 2012 MSD's engineer Leslie Sawyer reviewed MSD's own closed circuit recording of the actual storm sewer on the LOCKWOOD PROPERTY.

   b. Also in July 2012 MSD's Richard Unverferth described the joints of the actual storm sewer as being misaligned.

   c. In July 2013 MSD's engineer Matt Koesterer shook his head "no" when asked if the actual storm sewer was in good shape.

26. Further proof of the defect in the physical condition of the actual storm sewer creating a dangerous condition:

   a. In February 2014 Plaintiffs did their own closed circuit recording of the actual storm sewer on the LOCKWOOD PROPERTY which shows cracks

on every section of the actual storm sewer and shows water flowing between all of the misaligned joints. Additionally, the recording demonstrates part of the sewer on the LOCKWOOD PROPERTY is about to cave in. See February 13, 2014 recording of the actual storm sewer attached hereto and incorporated herein by reference as Exhibit F. A portion of the sewer downstream of Plaintiffs' property has already caved in, as described in December 9, 2004 MSD minutes regarding the repair of collapsed pipe in the Lockwood and Cherry storm sewer. That this is a continuation of the actual storm sewer under the LOCKWOOD PROPERTY was confirmed to Plaintiffs by Matt Koester on August 22, 2013.

b. Defendants' admissions Plaintiff injury directly resulted from the dangerous conditions. Richard Unverferth admitted to Plaintiffs on July 13, 2012 their basement floor looks moist after a rain due to the misaligned joints.

c. Plaintiffs' observations and actions, including obtaining their own closed circuit recording of the actual storm sewer under their house, have demonstrated that Plaintiffs' injury directly resulted from the dangerous conditions. Mold has grown on the drywall in the basement. Plaintiffs have had to treat the mold with bleach and use a de-humidifier. Plaintiffs have had to have the home stabilized by jacking it up after noticing cracks in the kitchen and dining room.

d. Plaintiffs continue to have new cracks in the dining room wall.

   e. Plaintiffs continue to suffer from the dangerous condition on the LOCKWOOD PROPERTY.

27. The injury to the LOCKWOOD PROPERTY directly results from the dangerous condition of the actual storm sewer and its location.

28. The dangerous condition and the location of the actual storm sewer created a reasonably foreseeable risk of harm and the kind of injury which has occurred to the LOCKWOOD PROPERTY.

29. Defendant MSD had actual notice of the dangerous condition in sufficient time prior to reconnecting the actual storm sewer to have taken measures to protect against the dangerous condition.

30. The damage to Plaintiffs' home and property substantially impairs Plaintiffs' peaceful enjoyment of their property.

31. The conduct of Defendant MSD constitutes a substantial and unreasonable interference with Plaintiffs' use and enjoyment of their property and further constitutes non-immune inverse condemnation for which Defendant MSD is liable to Plaintiffs for just compensation for their losses as set forth herein.

32. To the date of the filing of this First Amended Petition, Defendant MSD has not provided any relief to Plaintiffs for its continuing trespass and unlawful use of Plaintiffs' property without compensation, nor has Defendant MSD instituted a condemnation action, nor has Defendant MSD in any way redressed Plaintiffs' grievance.

## RSMo. Section 537.600.1(2): Known Dangerous Condition of the Storm Sewer:

## Exception to Governmental Immunity

33. Missouri Statutes Section 537.600.1(2) provides in part:

> Injuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury directly resulted from the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

34. The total appraised value of the LOCKWOOD PROPERTY from St. Louis County in 2012 was $422,600, which includes $163,100 for the land and $259,500 for the improvements.

35. The total appraised value of the LOCKWOOD PROPERTY from St. Louis County in 2014 was $320,200, which includes $102,500 for the land and $277,700 for the improvements.

36. The value of the LOCKWOOD PROPERTY has been significantly diminished because of the existence of the actual storm sewer under the house in excess of $200,000.00.

37. The value of the LOCKWOOD PROPERTY has been significantly diminished because of the dangerous condition of the actual storm sewer on the LOCKWOOD PROPERTY in excess of $80,000.00.

38. The actual storm sewer is the property of Defendant MSD.

39. At all relevant times, the actual storm sewer was under the jurisdiction of Defendant MSD.

40. At all relevant times, the actual storm sewer was under the control of Defendant MSD.

41. At all relevant times, the actual storm sewer was under the actual control of Defendant MSD.

42. At the September 12, 2013 1,536th Meeting of the Board of Trustees of Defendant MSD in the City of St. Louis during the public comments, Item 6 on the Agenda, Defendant Chairman BUFORD, in the presence of Board Members, caused Plaintiff JOAN G. JACOBSON to be physically removed from the meeting in derogation of her free speech rights and by assaulting Plaintiff JOAN G. JACOBSON.

43. The aforesaid actions of Defendant BUFORD were willful, not in good faith, done with malice and bad faith to prevent Plaintiff from expressing her views of the actions of Defendant MSD at the public portion of the MSD Board Meeting.

44. The actions which demonstrate a waiver of official immunity by Defendant BUFORD are:

    a. Plaintiff JOAN JACOBSON had been reading from a four and a half page, 16 pt. font statement attached as Exhibit G. At the top of Page 2 of Exhibit G, Plaintiff described a July 13, 2012 conversation with Richard Unverferth, at the time an Assistant Director of MSD wherein Unverferth told Plaintiff that MSD would work on rerouting the actual storm sewer but that in the meantime MSD was going to reattach to the actual storm sewer which runs under the LOCKWOOD PROPERTY "just like it always was.". After

9

          hearing Unverferth's name some executives looked squarely at Defendant BUFORD.

b.    After stating that during a July 29, 2013 meeting MSD requested the names of the new owners of 145 and requested that Plaintiffs approach the new owners on MSD's behalf, Plaintiff was interrupted for the first time at the bottom of Page 2. Plaintiff stated it was a public meeting and continued reading

c.    Plaintiff was stopped for a second time at the middle of Page 3 after referencing December 9, 2004 MSD minutes relating to caved in sewer pipe downstream from the LOCKWOOD PROPERTY which was confirmed by Matt Koesterer to be a continuation of the subject actual storm sewer in August 2013. Defendant BUFORD told Plaintiff "You cannot just come in here and do this." Plaintiff skipped the remainder of Page 3 and the top half of Page 4. Plaintiff read two sentences on Page 4 regarding a former MSD trustee who assisted the owner of the DEMOLISHED PROPERTY in contacting MSD regarding rerouting the actual storm sewer around the footprint of the house to be built. BUFORD called for armed guards.

d.    The armed guards then picked up Plaintiff under armpits and on her shoulders and lifted her out of the meeting room. The armed guards escorted Plaintiff to the front doors of MSD headquarters and threatened to call the police if she did not leave.

    e.    Defendant BUFORD knowingly, willfully and maliciously used the power of his office under color of state law to chill Plaintiff's redress of her grievances for trespass and inverse condemnation while not providing Plaintiffs any relief for their grievances.

    f.    The actions of Defendant BUFORD denied Plaintiffs their right to make a claim in public as to their grievances.

    g.    The actions of Defendant BUFORD were an attempt to mask the fact that Defendant MSD did not have the right to be on Plaintiffs' property.

    h.    The law in Missouri is the public's right to speak at a hearing should not be suppressed due to technicalities solely applicable to the laws and rules of the public hearing <u>and</u> the test for the validity of a public hearing is whether a fair minded person in attendance could say that everyone had been heard who should have been heard and that the legislative body gave reasonable faith and credit to all matters presented according to the weight and force that they were in reason entitled to receive. <u>State ex rel. Freeze v. City of Cape Girardeau</u>, 523 S.W.2d 123 (Mo.App. E.D. 1975).

45.    On October 7, 2013, Defendant MSD, by and through its legal counsel Kevin J. Marquitz, responded to the allegations Plaintiff JOAN G. JACOBSON was addressing at the September 12, 2013 Board Meeting. See attached Exhibit D.

### Jury Trial Demanded

46.    Plaintiffs demand a jury trial on issues so triable by a jury of their peers.

## Count I - Trespass

47. On or about April of 2012, Defendants, without lawful authority, twice entered upon the LOCKWOOD PROPERTY for the purpose of plotting the direction of the actual storm sewer and left painted lines on the LOCKWOOD PROPERTY and committed a trespass thereon.

48. This trespass caused injury to Plaintiffs' real property and subjects Defendants to compensatory, exemplary and punitive damages for their actions.

WHEREFORE, Plaintiffs pray for an order to remove or refrain from using the actual storm sewer by DEFENDANTS on the LOCKWOOD PROPERTY and demand for compensatory damages in an amount in excess of $25,000.00, punitive damages in the amount of $1,000,000.00 and for any other and further relief as the Court deems just and proper.

## Count II - Trespass

49. Defendants disconnected the actual storm sewer on the DEMOLISHED PROPERTY from its connection to the actual storm sewer which continued on to the LOCKWOOD PROPERTY.

50. Defendants rerouted the actual storm sewer around the site of the new house on DEMOLISHED PROPERTY.

51 Defendants reconnected the rerouted actual storm sewer on the DEMOLISHED PROPERTY. The actual storm sewer continues across and under the house on the LOCKWOOD PROPERTY without the consent of the LOCKWOOD PROPERTY owner.

52. Defendants' re-connection of the actual storm sewer on the DEMOLISHED PROPERTY with the knowledge that it encroached on the LOCKWOOD PROPERTY was intentional, purposeful and malicious.

53. This trespass caused injury to Plaintiffs' real property, and subjects Defendants to compensatory, exemplary and punitive damages for their actions.

WHEREFORE, Plaintiffs pray for an order to remove or refrain from using the actual storm sewer on the LOCKWOOD PROPERTY and demand for compensatory and damages in an amount in excess of $25,000.00, punitive damages in the amount of $1,000,000.00 and for any other and further relief as this Court deems just and proper.

## Count III - Inverse Condemnation

54. The actions of MSD as stated above have resulted in a taking without just compensation the Plaintiffs' property and damage to their real and personal property in an amount to be proven at trial.

55. The damage to the Plaintiffs' property was done by MSD for public use without just compensation.

56. The damage to the Plaintiffs' property exceeds $25,000.00.

WHEREFORE, Plaintiffs pray for a trial by jury on the issues of damages due them for pre and post judgment interest as permitted by law, for the attorney fees and costs and for such other relief as the Court deems proper.

## Count IV - Assault

57. Defendants BUFORD and MSD, on September 12, 2013, intentionally assaulted Plaintiff JOAN G. JACOBSON at the MSD Board Meeting with intent to cause Plaintiff to fear imminent bodily harm to herself.

13

58. As a result of Defendants BUFORD and MSD's wrongful and intentional assault on Plaintiff, she suffered apprehension of bodily harm, was frightened and otherwise caused to fear imminent bodily harm to her by Defendants' conduct.

59. Plaintiff was thereby greatly damaged in the following respects:

   a. emotional distress

   b. bodily injury

WHEREFORE, Plaintiff prays for judgment and compensatory damages in excess of $25,000.00 and punitive damages in the amount of $1,000,000.00 and such other amounts as are fair and reasonable and for her costs.

### Count V - 1983 Violation

60. MSD and Buford under color of law denied Joan Jacobson's free speech rights at a public meeting in which public comments were allowed.

61. MSD and Buford's actions were based on their desire that Joan Jacobson's comments not be publicly heard.

WHEREFORE, Plaintiffs pray for damages due in excess of $25,000.00, for the attorney fees and costs and for such other relief as the Court deems proper.

### Count VI - Slander/Defamation

62. In an article in the Call newspaper Lance LeComb, MSD Manager of Public Information justified the September 12, 2013 removal of Plaintiff JOAN JACOBSON from the MSD Public Meeting as a potential security hazard in light of the murders at a 2008 Kirkwood City Council meeting. He was cited as to that comment by Gloria Lloyd, reporter of the Call

63. He is quoted as saying, "She approached the board, which obviously there was some intent there to create a physical confrontation, I can't speak to her intentions, only she knows her intentions. But anyone who seeks to approach the officials who are running the meeting like that--no one knew what her intention was walking up there."

64. That as a direct and proximate result of Defendants' false and defamatory statements and its publication thereof, Plaintiff was greatly injured in her reputation, has suffered severe emotional, mental and physical pain, anguish and has caused Plaintiff to suffer bouts of depression affecting her family and home life and has otherwise suffered loss and injury.

65. Defendants made these false and defamatory statements with malice and for the purpose of injury to Plaintiff.

WHEREFORE, Plaintiffs pray for compensatory damages due in excess of $25,000.00 and punitive damages in the amount of $1,000,000.00 and such other amounts as are fair and reasonable and for her costs.

## Count VII - Negligence

66. Defendants' owed a duty of care to Plaintiffs to keep their property free of the unsafe and dangerous conditions of a actual storm sewer which is both defective and a continuing tress pass on Plaintiffs property.

67. The damage to the LOCKWOOD PROPERTY was directly caused by the specific defects in the actual storm sewer and it was a reasonably foreseeable risk of harm any from such defects.

68. Defendants breached its duty of care by maintaining then disconnecting then reconnecting and maintaining an unsafe and dangerous condition caused by a actual storm sewer which is both defective and a continuing trespass on Plaintiffs" property.

69. As a direct result of Defendants' negligence Plaintiff was injured by the devaluation of their property and water damage to their property.

WHEREFORE, Plaintiffs pray for compensatory damages due in excess of $25,000.00 and such other amounts as are fair, reasonable and proper.

**LAW OFFICES OF ROBERT S. ADLER, P.C.**

By: _____/s/ Robert S. Adler_____
ROBERT S. ADLER, #24229MO
Attorney for Plaintiffs
130 S. Bemiston, Suite 608
St. Louis, MO 63105
(314) 725-2400
(314) 725-2405 (facsimile)
robertsadlerpc@aol.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and complete copy of the foregoing was served upon the parties of record either through the Court's electronic filing system or by ordinary mail this 30th day of December, 2014, addressed to:

Scott K.G. Kozak
Attorney for Defendants
7700 Forsyth Blvd., Suite 1800
St. Louis, MO  63105

_____/s/ Robert S. Adler_____